**LEE LITIGATION GROUP, PLLC**
C.K. Lee (320249)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective*
*Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MILSI SIRI, *on behalf of herself, FLSA Collective Plaintiffs, and the Class* | |
| Plaintiff, | Case No.: |
| v. | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| NORTH AMERICAN PACKAGING, LLC, d/b/a ECONO-PAK, and PAUL A.S. WIEBEL JR., a/k/a PJ WIEBEL, | Jury Trial Demanded |
| Defendants. | |

Plaintiff, MILSI SIRI ("Plaintiff SIRI"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against NORTH AMERICAN PACKAGING, LLC, d/b/a ECONO-PAK ("Corporate Defendant"), and PAUL A.S. WIEBEL JR., a/k/a PJ WIEBEL ("Individual Defendant" and together with Corporate Defendant, "Defendants"), and states as follows:

## INTRODUCTION

1.    Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 et. seq. ("FLSA"), that she and others similarly situated individuals are entitled to recover from Defendants: (1) unpaid overtime wages, (2) liquidated damages, and (3) attorney's fees and costs.

1

2.      Plaintiff further alleges that, pursuant to both the Pennsylvania Minimum Wage Act ("PMWA") and the Pennsylvania Wage Collection Law ("WPCL"), that she and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime wages, (2) liquidated damages, and (3) attorney's fees and costs.

3.      Plaintiff further individually alleges that, pursuant to the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, et seq. ("PHRA"), Plaintiff was deprived of her statutory rights due to: (i) Defendants' discrimination based on Plaintiff's pregnancy, gender, and disability; (ii) Defendants' failure to reasonably accommodate Plaintiff's pregnancy; and (iii) Defendants' retaliation against Plaintiff. As a result of the above violations, Plaintiff is entitled to recover from Defendants: (1) back pay, (2) front pay, (3) punitive damages, (4) damages for egregious emotional distress, and (5) attorneys' fees and costs.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

5.      Venue is proper in the Eastern District pursuant to 28 U.S.C. §1391 because Defendant resides in this District. 28 U.S.C. §1391(c)(2) provides that a defendant is deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. §1391(d) provides that "in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State."

6.      This Court would have personal jurisdiction over Defendants were the Eastern District of Pennsylvania a separate state because Defendants have willfully fostered systematic contacts with it (as they do with the entirety of Pennsylvania and the United States), performing packaging services for, and then distributing those packages to, many businesses in the Eastern District. Defendants' website states that their facility "is conveniently close to major highways and East Coast cities." It also states, "Econo-Pak serves companies all over the country as well as global enterprises. Whether you need to package your food products for local grocery stores or for airlines traveling around the world, we can help."[1]

## PARTIES

7.      Plaintiff MILSI SIRI is a resident of New York County, New York.

8.      Defendants own and operate a co-packing and co-manufacturing facility located at 535 Route 6 and 209, Milford, PA 18337 (the "Facility").

9.      Corporate Defendant NORTH AMERICAN PACKAGING, LLC d/b/a ECONO-PAK is a foreign limited liability company organized under the laws of New Jersey, with a principal place of business at 535 Route 6 and 209, Milford, PA 18337 and an address for service of process located at c/o Corporation Service Company, 2595 Interstate Drive, Suite 103 Harrisburg, PA 17110.

10.     Defendants own and operate their co-packing and co-manufacturing business under the trade name ECONO-PAK.

11.     Individual Defendant PAUL A.S. WIEBEL JR. is the President and CEO of Corporate Defendant. PAUL A.S. WIEBEL JR. exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. PAUL A.S. WIEBEL

---

[1] https://www.econo-pak.com/about-us/

3

JR. exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Facility could complain to PAUL A.S. WIEBEL JR. directly regarding any of the terms of their employment, and PAUL A.S. WIEBEL JR. would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. PAUL A.S. WIEBEL JR. exercised functional control over the business and financial operations of Corporate Defendant. PAUL A.S. WIEBEL JR. had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class members, and could reprimand employees. *See* **Exhibit A** (article about Econo-Pak stating that the company is "[f]ounded and run by the Wiebel family.")

12.     At all relevant times, Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of FLSA.

13.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

14.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including, but not limited to, warehouse workers, scanners, drivers, packers, and delivery persons, among others) employed by Defendants on or after the date that is three (3) years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

15.     At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have

been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay all overtime wages owed. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.  Plaintiff is a member of the FLSA Collective.

16.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of FLSA, 29 U.S.C. 216(b). FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

17.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including, but not limited to, warehouse workers, scanners, drivers, packers, and delivery persons, among others) employed by Defendants on or after the date that is three (3) years before the filing of the Complaint in this case as defined herein (the "Class Period").

18.     All said persons, including Plaintiff, are referred to herein as the "Class." Class members are readily ascertainable. The number and identity of the Class members can be determined from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member can also be determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

19.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

20.     Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants of failing to pay all regular and overtime wages owed.

21.     Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

22.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiffs in wage and hour cases.

23.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

Because of losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

24.     Defendants and other employers throughout the state violate the PMWA and WPCL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

25.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

> a. Whether Defendants employed Plaintiff and the Class within the meaning of Pennsylvania law and applicable state laws;

b.  What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class members properly;

c.  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class members for their work;

d.  Whether Defendants properly notified Plaintiff and Class members of their hourly rate and overtime rate;

e.  Whether Defendants operated their business with a policy of failing to pay Plaintiff and Class members for all hours worked; and

f.  Whether Defendants operated their business with a policy of failing to pay Plaintiff and Class members for all regular and overtime hours worked.

**STATEMENT OF FACTS**

26.     On or around December 4, 2023, Plaintiff SIRI was hired as a warehouse worker to work at Defendants' Econo-Pak facility, located at 535 Route 6 and 209, Milford, PA 18337. Plaintiff's employment was terminated in or about October 2024.

*Plaintiff's Wage Claims*

27.     Most weeks, Plaintiff SIRI was scheduled to work five (5) days per week, Mondays to Fridays, from 3:40 p.m. to 12:15 a.m. That is, she worked about 8.58 hours per day for a total of 42.90 hours per week.

28.     Defendants automatically deducted 30 minutes from each shift on the premise that Plaintiff was taking a meal break. However, Defendants in fact forced Plaintiff and other non-exempt employees to work through their breaks.

29.     Additionally, Plaintiff worked on Saturdays at least once a month, as well as on Sundays on an as-needed basis, for shifts of the same length. During the last two (2) months of her employment, Plaintiff worked six (6) days per week, Mondays to Saturdays, also with the same shifts. FLSA Collective Plaintiffs and Class members also worked similar hours.

30.     Throughout her employment, Defendants agreed to pay Plaintiff SIRI at an hourly rate of fifteen dollars and fifty cents ($15.50) per hour. Plaintiff was paid weekly by third-party payment processors like PayPal. FLSA Collective Plaintiffs and Class members were paid in a similar manner and similar hourly rates.

31.     Throughout Plaintiff SIRI's employment, Defendants failed to compensate Plaintiff for all her worked hours, including overtime hours. Given that Plaintiff usually worked 8.58 hours each day, for five (5) days a week, for a total of 42.90 hours a week, she was entitled to wages of

approximately $687.43 on such weeks ((40 * $15.50) + (2.90 * $23.25)). However, she was always paid only $550.00.

32.    In weeks when Plaintiff worked 6 days (51.48 hours), she was entitled to wages of $886.91 ((40 * $15.50) + (11.48 * $23.25)). However, she was always paid only $750 on such weeks.

33.    In the occasional weeks when Plaintiff worked 7 days (60.06 hours), she was entitled to wages of $1,086.40 ((40* $15.50) + (20.06 * $23.50)). But she was paid only $850.

34.    FLSA Collective Plaintiffs and Class members were underpaid by similar amounts.

35.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs, and Class members for all regular and overtime hours worked. Defendants' violations were clearly willful because they were clearly aware of the discrepancy between what Plaintiff and other employees were being paid and what they were entitled to on the basis of hours worked.

*Plaintiff's Discrimination Claims*

36.    Additionally, Defendants violated the Pennsylvania Human Relations Act (PHRA) by subjecting Plaintiff to a hostile work environment on the basis of her sex and pregnancy, discriminating against Plaintiff on the basis of her pregnancy, and terminating Plaintiff both because she was pregnant and as retaliation for her having refused her supervisors' sexual advances.

37.    From the very beginning of Plaintiff's employment until its end, two of Defendants' managers—Manager Juan Davila and Manager Rafael [Last Name Unknown]—subjected her to unwanted sexual advances. Both would say things like: "Can you give me your phone number?", "Do you want to go out for dinner?", and "We should hang out sometime". Plaintiff consistently

rejected these advances, but they would not stop. In addition, Manager Rafael always greeted Plaintiff with a kiss on the cheek. Plaintiff never reciprocated these kisses, but the unwanted physical contact would not stop.

38.    Plaintiff had become pregnant by late July 2024, as a result of which she began having difficulty picking up and moving heavier packages. A supervisor named Roman [Last Name Unknown] noticed the change and guessed that she might be pregnant. When he asked, she confirmed that this was the case. As Plaintiff's pregnancy progressed, these challenges increased. In fact, Plaintiff found herself bleeding on the job a number of times when the work was particularly strenuous. So, she repeatedly asked Managers Roman [Last Name Unknown], Rafael [Last Name Unknown], and Juan Davila (who had all been informed of her pregnancy) to assign her to warehouse duties that didn't require as much heavy lifting. Plaintiff knew this to be possible. Not all the tasks that needed to be performed in the warehouse were especially strenuous, and Plaintiff knew of other pregnant women who were accommodated. But Plaintiff was not accommodated. Worse, her managers would go out of their way to assign her tasks that required her to stand for long periods of time and would threaten to fire her over trivial things. She was told, for example, that "If you spend more time in the bathroom, you'll be fired".

39.    Plaintiff was finally terminated in October 2024, after she had been (a) routinely harassed sexually, (b) discriminated against on the basis of her pregnancy, (c) refused reasonable accommodation for her pregnancy, and (d) subjected to retaliatory termination because she did not reciprocate her supervisors' sexual advances.

40.    As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff suffered from the loss of future earnings.

41.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of subjecting Plaintiff to discrimination, retaliation, and failure to reasonably accommodate.

42.    As a result of Defendants' discriminatory and retaliatory conduct, Plaintiff suffered from physical pain and egregious emotional distress.

43.    Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

44.    Plaintiff realleges and incorporates all the above allegations of this Class and Collective Action Complaint as fully set forth herein.

45.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

46.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of FLSA.

47.    At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

48.    At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs all the overtime wages they had earned.

49.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

50.     Defendants knew of and/or showed a willful disregard for the provisions of FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, when Defendants knew or should have known such was due.

51.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under FLSA.

52.     As a direct and proximate result of Defendants' willful disregard of FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to FLSA.

53.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## <u>VIOLATION OF PENNSYLVANIA MINIMUM WAGE ACT</u>

### (brought individually and on behalf of the Class)

54.     Plaintiff realleges and incorporates all the above allegations of this Class and Collective Action Complaint as fully set forth herein.

55.     At all relevant times, Plaintiff and Class members were employed by Defendants within the meaning of the PMWA.

56.     At all relevant times, Defendants engaged in a policy and practice of refusing to pay Plaintiff and Class members their proper compensation for their overtime work. *See Jedlicka*

*v. Simmons & Cos*., No. 2:23-CV-00606-CCW, 2024 U.S. Dist. LEXIS 4684, at *6 (W.D. Pa. Jan. 9, 2024) ("The FLSA and PMWA require employers to pay employees the minimum wage, plus overtime if the employee is non-exempt. … Under both Acts, the minimum wage is $7.25 per hour, and overtime is defined as any hours worked above 40 hours in a single workweek."); *Beauregard v. Broadway Electric Serra. Corp.*, No. 21-cv-1600, 2022 U.S. Dist. LEXIS 112581, 2022 WL 2293969, at *7 (W.D. Pa. June 24, 2022) (to prevail on a PMWA claim, a plaintiff "must demonstrate that (1) he and the other hourly workers were 'employees,' (2) [defendant] was their 'employer,' and (3) [defendant] failed to pay them the wages required by the PMWA.") (citing 43 Pa. Stat. §§ 333.103, 333.104).

57.     Due to Defendants' PMWA violations, Plaintiff and Class members are entitled to recover from Defendants unpaid overtime wages, liquidated damages and reasonable attorneys' fees and costs.

## COUNT III

## VIOLATIONS OF PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW

### (brought individually and on behalf of the Class)

58.     Plaintiff realleges and reavers by reference all allegations in all the preceding paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

59.     At all relevant times, Class members were employed by Defendants within the meaning of the WPCL.

60.     Defendants knowingly and willfully violated the WPCL by failing to pay Pennsylvania Class members all regular and overtime wages. The WPCL "provides a statutory remedy when the employer breaches a contractual right to earned wages." *Doe v. Kohn Nast & Graf, P.C.,* 862 F. Supp. 1310, 1325 (E.D. Pa. 1994).

14

61.    Defendants knowingly and willfully violated the WPCL.

62.    Due to Defendants' WPCL, Class members are entitled to recover from Defendants their unpaid compensation, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

**COUNT IV**

**<u>VIOLATION OF PENNSYLVANIA HUMAN RELATIONS ACT</u>**

63.    Plaintiff realleges and incorporates all the above allegations of this Complaint as if fully set forth herein.

64.    The Pennsylvania Human Rights Act provides that it shall be an unlawful discriminatory practice:

> For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required.

43 P.S Labor § 955(a)

65.    Sex discrimination includes pregnancy discrimination under PHRA. *See Galezniak v. Millville Health Ctr.*, 11-cv-1719, 2012 U.S. Dist. LEXIS 5808, at *12-14 (M.D. Pa. Jan. 17, 2012) ("The Commonwealth of Pennsylvania, via the Pennsylvania Human Relations Act, has articulated a broad public policy of protecting individuals from sex discrimination in their employment. 43 Pa. Stat. § 952(b). Terminating an employee because she becomes pregnant falls within the Pennsylvania Human Relations Act's definition of sex discrimination."); *Cerra v. E. Stroudsburg Area Sch. Dist.*, 450 Pa. 207, 299 A.2d 277, 280 (Pa. 1973) (terminating an employee because of a pregnancy "is sex discrimination pure and simple").

15

66.     The Pennsylvania Human Relations Act also prohibits retaliation against employees by prohibiting an employer from "discriminat[ing] in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act." § 955(d)

67.     Defendants violated the PHRA when they:

a) Subjected Plaintiff to a hostile workplace environment on the basis of sex by subjecting her to unwanted sexual advances;

b) Discriminated against Plaintiff on the basis of Plaintiff's pregnancy by requiring her to stand for long periods solely because this would discomfort a pregnant person;

c) Refused to reasonably accommodate Plaintiff's pregnancy by (1) refusing to assign her less strenuous tasks that were available to be performed and (2) threatening her with termination for behaviors that were natural for a pregnant person (going to the restroom more often); and

d) Unlawfully terminated Plaintiff both as retaliation for her refusal to accept her supervisors' unwanted sexual advances and because that refusal had made her supervisors impatient with, and so unwilling to accommodate, Plaintiff's pregnancy.

68.     This discriminatory conduct was in willful disregard of the provisions of the PHRA.

69.     As a direct and proximate result of the unlawful discriminatory and retaliatory employment practices engaged in by Defendants in violation of the PHRA, Plaintiff SIRI suffered damages in the form of lost future earnings, egregious emotional distress, and physical pain.

Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, damages for egregious emotional distress and physical pain, and attorneys' fees and costs.

70.     On February 26, 2025, Plaintiff filed a complaint describing Defendants' PHRA violations to the Pennsylvania Human Relations Commission.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself, FLSA Collective Plaintiffs, and Class members, respectfully requests that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA, PMWA, WPCL, and PHRA;

b.  An award of all unpaid regular and overtime wages due under the FLSA, PMWA, and WPCL, including all applicable punitive and liquidated damages and attorneys' fees;

c.  An award of all applicable damages for Defendants' violations of PHRA, including (1) back pay, (2) front pay, (3) punitive damages, (4) damages for egregious emotional distress and physical pain, and (5) attorneys' fees and costs.

d.  An award of statutory penalties, prejudgment, and post judgment interest, costs, and expenses of this action together with reasonable attorney's fees and expert fees and statutory penalties;

e.  Designation of Plaintiff as Representative of FLSA Collective Plaintiffs;

f.  Designation of this action as a class action pursuant to F.R.C.P. 23;

g.  Designation of Plaintiff as Representative of the Class and designation of Plaintiff's Counsel as Class Counsel; and

h.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.


Dated: March 5, 2025                                Respectfully submitted,

                                                    By:      */s/ C.K. Lee*
                                                             C.K. Lee, Esq.

                                                             **LEE LITIGATION GROUP, PLLC**
                                                             C.K. Lee (320249)
                                                             148 West 24th Street, 8th Floor
                                                             New York, NY 10016
                                                             Tel.: (212) 465-1188
                                                             Fax: (212) 465-1181
                                                             *Attorneys for Plaintiff, FLSA Collective*
                                                             *Plaintiffs and the Class*